**Archie Lee GRAY, Jr. and Virgie Bell Gray, His Wife, Plaintiffs,**

v.

**Robert L. RANKIN and the United States of America, Acting Through the United States Farmers Home Administration, Defendants.**

Civ. A. No. J88–0627(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

May 31, 1989.

**116**

Michael S. Allred, Satterfield & Allred, Jackson, Miss., for plaintiffs.

Joseph B. Moffett, Fayette, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiffs Archie Lee Gray, Jr. and Virgie Bell Gray, recipients of a rural housing loan from the Farmers Home Administration (FmHA), brought this action against the United States, acting through the FmHA, alleging breach of contract and seeking damages, declaratory relief and specific performance. Presently before the court is the motion of the government to dismiss the complaint.[1] Plaintiffs have responded to the motion, and the court has considered the memoranda with attachments submitted by the parties in ruling on the motion.

In March 1988 the Grays applied for and subsequently received a rural housing loan from FmHA in the amount of $7500 for repairs and improvements to their home.[2] They entered into a construction contract with defendant Robert L. Rankin, who worked on the project until September 1988 when the plaintiffs, through their attorney, gave Rankin notice by letter that the work was "grossly overdue and so defective that an itemization of the exact nature of the

---

1. Plaintiffs argue that defendant's motion is not and should not be treated as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), but rather as a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), and further argue that this motion for judgment on the pleadings is "without evidentiary support" and has "no factual predicate ... whatsoever." This argument is difficult to comprehend but the court will nevertheless attempt to address it. There exists no basis for treating defendant's motion as one for judgment on the pleadings. A simple reading of Rule 12(c) indicates this motion, and therefore entry of judgment on the pleadings, is proper only after the pleadings have been closed, i.e., after an answer has been filed. Plaintiffs may not request that defendant's motion be treated as one for judgment on the pleadings when plaintiffs have filed the only pleading thus far. Furthermore, judgment on the pleadings is, as the name so obviously indicates, judgment on only the pleadings, and thus the motion would require, and the court would consider, no evidentiary support.

2. 42 U.S.C. § 1471 *et seq.* (1978 & Supp.1989) authorizes the Secretary of Agriculture to extend financial assistance through the Farmers Home Administration for, *inter alia,* the construction or repair of rural homes to persons otherwise unable to obtain credit for this purpose. Regulations governing rural housing construction and repair loans are found at 7 C.F.R. §§ 1924.1–.266 (1988).

defects [was] impossible" and that they considered him to be in breach of the contract. The letter instructed Rankin to discontinue all work on their home. By that same letter, plaintiffs informed FmHA that they considered FmHA to be responsible for these defects, since FmHA had breached its contractual duties to plaintiffs to inspect and supervise the construction. According to plaintiffs, FmHA has refused and continues to refuse to cure its breach.

■ The government bases its motion to dismiss on its immunity to suit and this court's corresponding lack of subject matter jurisdiction over an action against the United States. It is well established "that the United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). Thus, in order to maintain their action, plaintiffs must establish that their claims meet the terms of some statute whereby the government has so consented.[3]

■ Plaintiffs rely, in part, on the waiver of immunity found in the Tucker Act, 28 U.S.C. § 1346(a)(2) (1976 & 1989), which waives sovereign immunity as to claims for money damages against the United States "founded ... upon any express or implied contract with the United States."[4] The relevant inquiry in the present case is whether plaintiffs' claim is so founded. It has long been held that the reference in the Tucker Act to implied contracts refers only to contracts implied-in-fact, not to those implied-in-law. *See, e.g., Army and Air Force Exhchange Serv. v. Sheehan*, 456

U.S. 728, 738 n.10, 102 S.Ct. 2118, 2124 n.10, 72 L.Ed.2d 520 (1982); *Hatzlachh Supply Co. v. United States*, 444 U.S. 460, 465 n.5, 100 S.Ct. 647, 650 n.5, 62 L.Ed.2d 614 (1980); *Goodyear Tire & Rubber Co. v. United States*, 276 U.S. 287, 293, 48 S.Ct. 306, 307, 72 L.Ed. 575 (1928); *United States v. Minn. Mut. Inv. Co.*, 271 U.S. 212, 217, 46 S.Ct. 501, 502, 70 L.Ed. 911 (1926); *Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1494 (D.C.Cir.1984); *United Elec. Corp. v. United States*, 647 F.2d 1082, 1084 n.5 (Ct.Cl.), *cert. denied*, 454 U.S. 863, 102 S.Ct. 322, 70 L.Ed.2d 163 (1981); *Neal v. Bergland*, 646 F.2d 1178, 1181 (6th Cir.1981), *aff'd sub nom. Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983); *Algonac Mfg. Co. v. United States*, 428 F.2d 1241, 1256 (Ct.Cl. 1970). This distinction is logical when considered along with the rule that the government may not be sued without its consent. Implied-in-fact contracts, like express contracts, are actual contracts—they arise from the conduct of the parties and the circumstances of their dealings. Although there exists no direct evidence of a "meeting of the minds" or consent to the agreement by the parties in cases involving implied-in-fact contracts, the factual evidence is nevertheless sufficient to warrant the inference of assent. *Parker v. Dep't of Health, Educ. and Welfare*, 478 F.Supp. 1156, 1160 (M.D.Tenn.1979); *see also Algonac*, 428 F.2d at 1255–56. Thus, the United States may be sued on both express and implied-in-fact contracts because in both cases the United States has actually assented to the contractual obligation and has thereby consented to suit on the contract. *See Stewart Sand and Material Co. v.*

---

**3.** Plaintiffs have denominated their suit as being against the "United States of America, acting through the United States Farmers Home Administration." It makes no difference that plaintiffs are not attempting to sue FmHA, because FmHA is not a legal entity capable of being sued for money damages. *Owyhee Grazing Ass'n v. Field*, 637 F.2d 694 (9th Cir.1981); *Conyugal Partnership v. Gracia*, 331 F.Supp. 521 (P.R.1971); *see also* 7 U.S.C. § 2201 *et seq.* (1973

& Supp.1989) (no "sue and be sued" clause in Department of Agriculture's enabling statute).

**4.** District courts have jurisdiction concurrent with the United States Claims Court for Tucker Act claims not exceeding $10,000. 28 U.S.C. § 1346(a)(2). For claims over this amount, exclusive jurisdiction lies with the United States Claims Court. *See id.;* 28 U.S.C. § 1491 (1973 & Supp.1989). In the case at bar, plaintiffs seek damages in the amount of $9500.

*Southeast State Bank,* 318 F.Supp. 870, 874 (N.D.Mo.1970). Contracts implied-in-law, on the other hand, are not really contracts at all but merely remedies granted by the court to enforce equitable or moral obligations in spite of the lack of assent of the party to be charged. *Algonac,* 428 F.2d at 1255–56 (quoting 17 C.J.S. *Contracts* § 4 (1963)); *Parker,* 478 F.Supp. at 1160. It follows that in no sense has the United States consented to be contractually bound by or to be sued upon a contract implied-in-law. *See Stewart Sand,* 318 F.Supp. at 874.

■ The court is of the opinion that plaintiffs' claim may not be brought under the Tucker Act because the complaint alleges neither an express nor an implied-in-fact contract. The complaint states that the contractual relationship between the Grays and the government arose from nine documents associated with the loan transaction.[5] Plaintiffs have failed to point out, however, and the court is unable to find, any statement that could be construed as an express promise by the government to inspect and supervise, for plaintiffs' benefit, the construction repair work. Neither is any such express obligation to be found in the applicable regulations, which the court assumes, for purposes of this motion, to have been incorporated by reference in the promissory note.[6] In fact, the regulations indicate to the contrary, expressly stating that "[t]he inspections [by FmHA] create or imply no duty or obligation to the particular borrower" and that "[t]he borrower will be responsible for making inspections necessary to protect the borrower's interest." 7 C.F.R. § 1924.9. Neither

is there any allegation of any other express representation by the government, such as an oral statement by one of its agents. It is clear, therefore, that plaintiffs are not alleging an express contract. Likewise, plaintiffs do not charge that, through their course of dealing, the parties reached some sort of tacit understanding that the government would inspect the work for plaintiffs' benefit. The complaint alleges no facts about the parties' course of dealings or the circumstances surrounding the loan transaction. Thus, plaintiffs' claim is not based upon a contract implied-in-fact. Rather, the type of implied contract alleged by defendants is a contract implied-in-law. The gist of plaintiffs' theory is simply that they relied on FmHA to make sure the work was done properly and therefore FmHA should be held accountable. It may be that defendant was somehow morally obligated to supervise and inspect the work, or that as a matter of public policy FmHA should be responsible for construction defects because it is usually in a better position than the borrower to recognize faulty construction and because rural housing borrowers are often relatively unsophisticated in such matters and tend to rely on FmHA's inspection.[7] But in the case at bar, the defendant is not a private party, but the government. Contracts based solely on moral or public policy considerations may not be enforced against the United States. *See Parker,* 478 F.Supp. at 1162.

■ As another basis for subject matter jurisdiction, plaintiffs suggest the waiver of sovereign immunity embodied in the Federal Tort Claims Act (FTCA), 28 U.S.C.

---

5. The documents consist of a bank statement from Jefferson County Bank for the account of the Grays and FmHA, along with copies of cancelled checks to defendant Rankin, and the following FmHA forms: Rural Housing Applicant Interview, Truth in Lending Disclosure Statement, Request for Obligation of Funds, Promissory Note executed by the Grays in favor of FmHA, Deposit Agreement executed by the Grays and the Jefferson County Bank, Construction Contract executed by Mr. Gray and defendant Robert L. Rankin, and two Contract Change Orders executed by Gray, Rankin and FmHA.

6. The promissory note states that it "shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof."

7. One court, ignoring the Tucker Act's exclusion of contracts implied-in-law, has found such an obligation. *See Kipf v. United States,* 501 F.Supp. 110 (D.Mont.1980).

§ 1346(b) (1976).[8] Assuming *arguendo* that plaintiffs have stated a claim for negligence, the court concludes that they may not proceed under the FTCA because they have failed to file, previous to this suit, an administrative claim for a sum certain. Such a claim is a jurisdictional prerequisite to filing a tort claim against the United States. *United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301 (5th Cir. 1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1987); *Rise v. United States*, 630 F.2d 1068 (5th Cir.1980).

Plaintiffs suggest, as a third possibility for subject matter jurisdiction, that the United States is not immune to claims for declaratory and injunctive relief. Although plaintiffs have failed to support this assertion with any authority, this court recognizes that, under the Administrative Procedure Act, the United States has waived its immunity to claims seeking relief other than money damages against federal agencies. 5 U.S.C. § 702 (1977). However, the complaint cannot truly be characterized as seeking nonmonetary relief. The only relief sought that could be obtained from the government, other than money damages, is specific performance of the contract and a declaratory judgment that plaintiffs have a right to both money damages and to performance, and the only performance the government could render would be to hire a contractor to correct and complete the repair work. This relief would be essentially no different from granting plaintiffs a judgment against the government for damages in the amount necessary to hire their own contractor. Thus the payment of damages to plaintiffs would completely satisfy their claims against the government for completion of the construction. *See Jaffee v. United States*, 592 F.2d 712, 715 (3d Cir.) (claims against government for provision of medical care held to be essentially claims for money damages, since payment of money would fully satisfy plaintiff's request), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). In the court's opinion, a complaint seeks relief other than money damages within the meaning of the Administrative Procedure Act only if the equitable relief sought has a "significant prospective effect or considerable value apart from merely determining monetary liability of the government," *State of Minn. by Noot v. Heckler*, 718 F.2d 852, 858 (8th Cir.1983). Thus, the Administrative Procedure Act's waiver of sovereign immunity does not apply to plaintiffs' claims.[9]

Accordingly, because this court is without subject matter jurisdiction over plaintiffs' claims against the United States, the government's motion to dismiss will be granted. A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED.

---

8. Although the complaint alleges only breach of contract, the contract claim, as interpreted by this court *supra*, alleges a type of contractual duty that is virtually indistinguishable from a duty in tort to use due care in the inspection and supervision of a borrower's construction work. That an implied-in-law contractual duty will often be indistinguishable from a tort duty indicates another basis for the doctrine excluding implied-in-law contracts from jurisdiction under the Tucker Act: A plaintiff should not be able to avoid jurisdictional prerequisites of the FTCA, such as, e.g., exhaustion of administrative remedies, by labeling what is in reality a tort duty as a contractual duty and proceeding under the Tucker Act.

9. In a final, desperate attempt in their ill-fated quest for subject matter jurisdiction, plaintiffs seek to persuade this court that it has *"Bivens* jurisdiction" to award plaintiffs a money judgment against the government. *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The court is unable to discern the relevance of this reference to *Bivens* actions, which are suits brought against federal officers in their individual capacities for violations of constitutional rights. The case at bar is against the government, not any individuals, and is for breach of contract, not constitutional violations.